# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

KIMBERLY JONES,

        Appellant,

        v.

SMALL BUSINESS
ADMINISTRATION,

        Agency.

DOCKET NUMBER
SF-1221-11-0237-W-6

DATE: September 16, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Alan K. Hahn, Esquire, San Diego, California, for the appellant.

Anthony G. Parham, Esquire, Washington, D.C., for the agency.

Kathleen Eldridge, Buffalo, New York, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1 The appellant has filed a petition for review of the initial decision, which found that she was not entitled to corrective action in this individual right of

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

action (IRA) appeal. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. We MODIFY the Final Order to discuss the appellant's assertion that the initial decision does not comport with *Whitmore v. Department of Labor*, 680 F.3d 1353 (Fed. Cir. 2012), but we conclude that a different outcome is not warranted. Except as expressly MODIFIED by this Final Order, we AFFIRM the initial decision.

## BACKGROUND

¶2        The initial decision contains a comprehensive recitation of the facts of this matter, but we summarize the relevant portions herein. The appellant was appointed to the General Schedule (GS)-14 District Director position, effective June 22, 2008, subject to a 1-year initial probationary period beginning November 13, 2007, and a 1-year supervisory probationary period beginning June 22, 2008. *Jones v. Small Business Administration*, MSPB Docket No. SF-1221-11-0237-W-1, Initial Appeal File (IAF), Tab 17, Subtab 4bb at 19. During her tenure at the agency, the appellant made a number of complaints about her coworkers, the workplace climate, and the way that the agency completed its annual reviews, and a number of individuals complained about her. *E.g.*, *id.*,

Subtab 3; *Jones v. Small Business Administration*, MSPB Docket No. SF-1221-11-0237-W-5, Appeal File (W-5 AF), Tab 11, Exhibit (Ex.) 10, Tab 13, Ex. Q. Although the appellant was eligible to receive a promotion to GS-15 in November 2008, the agency did not promote her. Subsequently, in March 2009, the agency removed the appellant from her GS-14 District Director position due to unsatisfactory performance and reassigned her to a nonsupervisory GS-14 Business Development Specialist position in a different office. IAF, Tab 17, Subtabs 4aa, 4cc.

¶3 In July 2010, the agency proposed to suspend the appellant for 3 days based on charges of unprofessional behavior (two specifications) and failure to follow instructions (one specification). *Id.*, Subtab 4t at 203-08. The agency upheld the suspension, and the appellant served the suspension in August 2010. *Id.*, Subtab 4s, Subtab 4t at 8-11. On October 22, 2010, the appellant requested sick leave, but the agency denied the request, and she was marked absent without leave (AWOL) on this date. *Id.*, Subtab 4*l* at 44, 46. The appellant went on leave without pay in February 2011 and separated under voluntary disability retirement, effective November 18, 2011. W-5 AF, Tab 11, Ex. 121.

¶4 After exhausting her administrative remedies with the Office of Special Counsel (OSC), W-5 AF, Tab 13, Ex. Y, Bates numbers 000223-000226, the appellant filed a Board appeal alleging that the agency took or failed to take a variety of personnel actions against her in retaliation for whistleblowing activity, IAF, Tab 1. The administrative judge found that the Board has jurisdiction over this appeal. IAF, Tab 23, Initial Decision. The appeal was dismissed without prejudice and refiled several times. *E.g.*, *id.*; W-5 AF, Tab 1, Tab 23, Initial Decision; *Jones v. Small Business Administration*, MSPB Docket No. SF-1221-11-0237-W-6, Appeal File (W-6 AF), Tab 1. The administrative judge held a 4-day hearing. W-6 AF, Tabs 54-57, Hearing Compact Diskettes (HCDs).

¶5 The administrative judge issued an initial decision in which she found that the appellant proved by preponderant evidence that she made protected

disclosures and these disclosures were a contributing factor in the following personnel actions: (1) failure to promote her to GS-15; (2) reassignment to the nonsupervisory position; (3) 3-day suspension; and (4) 1 day of AWOL. W-6 AF, Tab 60, Initial Decision (ID) at 20-25. The administrative judge made credibility determinations in the agency's favor and concluded that the agency proved by clear and convincing evidence that it would have taken or failed to take the same personnel actions in the absence of the appellant's whistleblowing activity. ID at 25-42. Accordingly, the administrative judge denied corrective action. ID at 43.

¶6 The appellant has filed a petition for review, the agency has filed a response, and the appellant has filed a reply. Petition for Review (PFR) File, Tabs 3, 5-6. On review, the appellant argues that the administrative judge's clear and convincing evidence analysis was improper. PFR File, Tab 3 at 6-7.[2] In particular, the appellant asserts that the initial decision did not comport with *Whitmore*, 680 F.3d 1353, because the administrative judge did not evaluate all of the evidence that detracted from the agency's case and took a "dismissive" view of her evidence, PFR File, Tab 3 at 6, 14-33.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶7 If, as here, an appellant has established that her protected whistleblowing disclosures were a contributing factor in personnel actions taken against her, then the agency must demonstrate by clear and convincing evidence that it would have taken the same personnel actions in the absence of such disclosures. 5 U.S.C. § 1221(e)(2). In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the

---

[2] Neither party challenges the administrative judge's conclusions that the appellant made protected disclosures and that the disclosures were a contributing factor in the agency's decision to take several personnel actions against her, ID at 20-25, and we find no reason to disturb these conclusions.

absence of whistleblowing, the Board will consider the following factors: the strength of the agency's evidence in support of its action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).[3] In *Whitmore*, 680 F.3d at 1368, the court clarified that "[e]vidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion." The court further determined that "[i]t is error for the [Board] to not evaluate all the pertinent evidence in determining whether an element of a claim or defense has been proven adequately." *Id*.

¶8        Regarding the failure to promote and reassignment actions,[4] the appellant argues on review that the administrative judge overestimated the strength of the agency's evidence, made improper credibility determinations, and omitted favorable evidence. PFR File, Tab 3 at 15-18. The administrative judge noted that the appellant's testimony conflicted with the testimony of D.O. and B.B. regarding the likelihood of her obtaining a promotion to GS-15; the administrative judge credited the agency officials' testimony because it was consistent with the offer letter, which stated that the appellant would only be "eligible" for a promotion in November 2008 "contingent on satisfactory

---

[3] The appellant does not challenge the administrative judge's conclusion that there was no evidence regarding the third *Carr* factor for any of the personnel actions at issue in this matter, and we affirm this aspect of the initial decision. PFR File, Tab 3 at 22, 27, 32; ID at 31, 36, 42.

[4] The administrative judge properly noted that neither of these actions are disciplinary actions; thus, the Board must consider whether the agency had legitimate reasons for its actions when evaluating the strength of the agency's evidence. ID at 26 (citing *Azbill v. Department of Homeland Security*, 105 M.S.P.R. 363, ¶ 18 (2007); *Gonzales v. Department of the Navy*, 101 M.S.P.R. 248, ¶ 12 (2006)).

performance." ID at 26; W-5 AF, Tab 11, Ex. 14; *see Hillen v. Department of the Army*, [35 M.S.P.R. 453](), 458 (1987) (stating that, to resolve credibility issues, an administrative judge must, among other things, explain in detail why he found the chosen version more credible, considering such factors as the consistency of the witness's version of events with other evidence). The Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, [288 F.3d 1288](), 1301 (Fed. Cir. 2002).[5]

¶9      The appellant also disagrees with the administrative judge's characterization of the agency's "strong reasons" for not promoting her in November 2008, including her overall revised performance rating, the "list of improvements" contained in her revised performance rating, and feedback from J.M.Q. about her performance while on a 30-day detail in his office. PFR File, Tab 3 at 15-16; ID at 27. These arguments are unavailing.

¶10     The record reflects that the appellant requested a second-level review of her "below expectations" performance rating for fiscal year 2008. W-6 AF, Tab 17, Subtab 4dd. As a result of this request, B.B. increased the appellant's rating in the "People Management Responsibilities" category to fully successful and increased her overall rating to fully successful. *Id.* at 1. In the revised narrative section of the "People Management Responsibilities" category, B.B. included

---

[5] In her reply brief, the appellant asserts, that post-*Whitmore*, the Board is not bound to defer to the administrative judge's demeanor-based credibility determinations. PFR File, Tab 6 at 5 (citing *Mattil v. Department of State*, [118 M.S.P.R. 662](), ¶ 29 n.3 (2012)). We have considered the appellant's reliance on *Mattil*, but we do not interpret the relevant language in that decision to preclude us from deferring to the administrative judge's demeanor-based credibility determinations, particularly when, as here, the administrative judge has properly evaluated all of the pertinent record evidence consistent with *Whitmore*.

instructions that, moving forward, the appellant should be "proactive as opposed to reactive" in such areas as recognizing and rewarding superior accomplishments by subordinates and fostering an environment of open communication and respect. *Id.* at 2. We need not resolve whether these instructions constituted a "list of improvements," ID at 27, or "coaching and guidance," PFR File, Tab 3 at 16, because these instructions do not detract from the strength of the agency's evidence.

¶11 We also discern no inconsistency regarding B.B.'s reliance on feedback about the appellant from J.M.Q. ID at 27; IAF, Tab 17, Subtab 4f at 2, Subtab 4bb at 62-63. Even if J.M.Q. did not testify that the appellant was unsatisfactory during the mentoring period, PFR File, Tab 3 at 16, his declaration documented shortcomings in her work and interactions with staff during this time. IAF, Tab 17, Subtab 4f at 3 ("[The appellant's] complaints about . . . staff issues dominated her attention and her receptivity toward seeking constructive solutions was low . . . . [I]t was clear that any advice on strategies to improve the relationships with key . . . staff were not heeded.").

¶12 We also have considered the appellant's argument that the administrative judge failed to mention or analyze facts surrounding the "office dysfunction and strained relations" as a result of the appellant's whistleblowing, and that this evidence detracts from the strength of the agency's evidence. PFR File, Tab 3 at 17 (citing *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285 (2013)). We understand the appellant's reference to "office dysfunction and strained relations" as involving, among other things, the problems between her and G.S. and S.C. The administrative judge, however, discussed these problems in the initial decision. ID at 6-8, 11. Moreover, *Chavez* is distinguishable because Ms. Chavez had "excellent performance," which buttressed the Board's conclusion in that case that the administrative judge overestimated the strength of the agency's evidence. *Chavez*, 120 M.S.P.R. 285, ¶¶ 28-31. In contrast, the appellant's performance in this matter was fully successful, IAF, Tab 17,

Subtab 4dd, and we find that the administrative judge did not overestimate the strength of the agency's evidence. In the absence of any statute, regulation, agency policy, or agreement between the appellant and the agency that would obligate the agency to promote her to the GS-15 level after completing her probationary period, we discern no error with the administrative judge's conclusion that the agency's evidence was strong regarding this action.

¶13    Turning to the reassignment action, the appellant asserts that the administrative judge ignored the fact that the reassignment letter lacked specific information regarding her inability to manage people or how she became argumentative when seeking feedback from others and her testimony and other evidence contradicted the allegations in the letter. PFR File, Tab 3 at 18; W-6 AF, Tab 59 at 11-14. We are not persuaded by these assertions.

¶14    The reassignment letter offers general examples of the appellant's inability to make management decisions, feedback from her peers regarding her argumentative nature, her tendency to focus on "minor details of a situation rather than following the issue through the entire process before making a decision," and her failure to appreciate or understand the relationship that the agency has with Government officials and resource partners. IAF, Tab 17, Subtab 4cc. We agree with the administrative judge that these reasons constitute legitimate management reasons for a reassignment.

¶15    Regarding her assertion that her testimony and evidence contradicted some of the allegations in the reassignment letter, the administrative judge discussed her testimony and the testimony of B.B. and D.O. regarding the appellant's performance as a supervisor and the appellant's contention that disgruntled subordinates were the source of complaints against her. ID at 27-28. The administrative judge noted that some employees, including G.S. and S.C., were difficult to supervise and not performing their jobs properly. ID at 28. However, she found B.B.'s and D.O.'s testimony regarding the appellant's deficiencies as a supervisor credible and consistent with the documentary evidence. ID at 28-29.

We see no basis to revisit that conclusion. *Haebe*, 288 F.3d at 1301. We therefore affirm the administrative judge's conclusion that the agency's evidence regarding the reassignment action is strong.

¶16    The appellant next challenges the administrative judge's finding that B.B., D.O., and J.M.Q. did not have a particularly strong motive to retaliate, even though they were high-level management officials at the agency against whom the appellant was complaining. ID at 29-31. She asserts that the agency's motive to retaliate is evidenced by its decision not to use the full extent of the supervisory probationary period, its refusal to allow her to respond to the allegations in the reassignment letter, and its failure to interview her about the allegations. PFR File, Tab 3 at 19.

¶17    Importantly, the administrative judge acknowledged that the agency reassigned the appellant during her supervisory probationary period. ID at 11-12. Moreover, the agency's concerns about the appellant's skill set and deficiencies as a supervisor stemmed from multiple managerial and nonmanagerial sources. *E.g.*, ID at 5-12, 27-30; IAF, Tab 17, Subtab 4bb. Given this evidence, we conclude that the agency's failure to talk to her about the allegations in the reassignment letter, its failure to give her an opportunity to respond to the allegations therein, and its decision to reassign her during her probationary period, were not motivated by reprisal. *See Social Security Administration v. Carr*, 78 M.S.P.R. 313, 335 (1998) (concluding that the agency's failure to provide the appellant with an opportunity to respond to the allegations was not caused by reprisal), *aff'd*, 185 F.3d 1318 (Fed. Cir. 1999).

¶18    We have considered the appellant's contention that the administrative judge took a dismissive view of her "smoking gun" evidence, i.e., that the agency faulted her for reporting issues within her division. PFR File, Tab 3 at 20-21. The agency's reference in the reassignment letter to an example in which the appellant wanted to bring "in" the Office of Inspector General (OIG) for assistance on programmatic issues, as opposed to fixing the problem herself using

the resources of her office, IAF, Tab 17, Subtab 4cc at 2, does not constitute discipline based on protected whistleblowing. Rather, the administrative judge concluded that the appellant was reassigned because B.B. and D.O. believed that she failed to display the necessary leadership and management skills and was unwilling to find solutions. ID at 30. Notably, the administrative judge credited the testimony of B.B. and D.O. that they encouraged the appellant to report program issues to the program office for resolution and not to make allegations to the OIG about criminal fraud without a factual basis for doing so. ID at 31. The appellant has not persuaded us that the administrative judge's credibility determinations were erroneous. *Haebe*, 288 F.3d at 1301.

¶19 The appellant contends on review that drafts of the reassignment letter had to be edited to have a "reprisal paragraph" removed indicating that retaliatory language was part of the agency's rationale. PFR File, Tab 3 at 22; W-5 AF, Tab 13, Exhibits T-U. We modify the initial decision because the administrative judge did not specifically mention this contention. We cannot conclude from the ambiguous references in the documents cited by the appellant to the removal of a "reprisal paragraph" that the draft reassignment letter contained retaliatory language or that the deletion of this paragraph constitutes evidence of the agency's motive to retaliate. Thus, a different outcome is not warranted. Having affirmed the administrative judge's finding regarding the strength of the agency's evidence and the motive to retaliate, we agree with her conclusion that the agency proved by clear and convincing evidence that it would have not promoted the appellant to the GS-15 level and would have reassigned her absent her whistleblowing activity.

¶20 Regarding the 3-day suspension, the administrative judge concluded that proposing official A.Q. and deciding official J.M.Q. had strong reasons to believe that the appellant treated J.P., an employee of firm A.C.P., unprofessionally.

ID at 33; IAF, Tab 17, Subtab 4t at 216-20.[6] She rejected the appellant's assertion that J.P. had a motive to fabricate because A.C.P. was not in compliance and he might lose his job if A.C.P. was terminated from the agency's program. ID at 33. She also noted that A.C.P. received no contracts or other financial assistance from the agency other than counseling and development. *Id*. We modify the initial decision because the administrative judge did not specifically address the "direct evidence" that A.C.P. benefited from its continued work with certain companies due to its small business status, which could have motivated J.P. to fabricate the story about the appellant's rudeness. PFR File, Tab 3 at 23 (citing W-5 AF, Tab 13, Ex. LL). Even if we consider this evidence and the possibility that J.P. had some motive to retaliate, we discern no error with the administrative judge's conclusion that the agency's evidence in support of this specification was strong. ID at 33.[7]

¶21 The crux of the failure to follow instructions charge is that S.O. directed the appellant via email to contact firm S.S.C. and schedule a time for them to come into the office to discuss outstanding issues, and she failed to do so. IAF, Tab 17, Subtab 4t at 206. The appellant challenges the administrative judge's finding that the evidence supporting this charge was strong for the following reasons: (1) she had insufficient notice of the instruction due to her leave schedule; (2) she could not comply with the instruction because the firm's owner was in Maryland and she was in California; and (3) the purpose of the instruction was asking her to

---

[6] We affirm the administrative judge's conclusion that the evidence in support of the first specification of the unprofessional behavior charge, involving E.P., the director of building security, was weak. ID at 32-33; PFR File, Tab 3 at 23.

[7] The appellant argues in her reply brief that the administrative judge's credibility determinations are not entitled to deference because J.P. did not testify. PFR File, Tab 6 at 9. Even if we did not defer to the administrative judge's credibility determinations, we conclude that the strength of the agency's evidence regarding this charge was strong.

do something to which she already had objected.  PFR File, Tab 3 at 24-26; ID at 33-35.

¶22    The administrative judge discussed the effect of the appellant's leave in her analysis of the strength of the agency's evidence.  She concluded, however, that S.O. "credibly explained" that he believed that the appellant refused to follow his instruction because she did not want to meet with the firm, not because of her leave schedule or the firm owner's location.  ID at 34.[8]  The record reflects that, despite S.O.'s clear instruction to set up a meeting with S.S.C., the appellant did not do so.  Even after she returned from her leave, the appellant still refused to meet with S.S.C., telling S.O. that she "[saw] no need or benefit to 'discuss[ing]' [her] concerns in person in a meeting with the firm."  IAF, Tab 17, Subtab 4t at 23-24.  We therefore agree that the agency's evidence regarding this charge was strong.

¶23    Having affirmed the administrative judge's conclusion that the agency's evidence was strong regarding the 3-day suspension, we now turn to the appellant's arguments regarding the motive to retaliate.  The administrative judge noted that S.O., A.Q., and J.M.Q. had some motive to retaliate because they were high-level management employees charged with ensuring compliance with program regulations, which was part of the appellant's disclosures.  ID at 35. Instead of the administrative judge's conclusion that there existed a fundamental disagreement with the appellant's approach to dealing with firms, ID at 35-36, the appellant proffers that the real conflict was that she "wanted to follow the statute[s] and regulations" and S.O., A.Q., and J.M.Q. did not, PFR File, Tab 3

---

[8] The appellant also contends that it was error for the administrative judge to credit S.O.'s explanation because he did not testify, and thus it was not a demeanor-based credibility determination.  PFR File, Tab 6 at 10.  Even if we modify the initial decision and conclude that the administrative judge's credibility determination involving S.O. was not entitled to deference, we agree that the agency had strong reasons to support this charge based on the undisputed fact that the appellant did not comply with S.O.'s order to schedule a meeting with S.S.C.

at 26-27. She also alleges that J.M.Q. lacked credibility because she disclosed violations of law and fraud to him and told him that she went to OIG, but he stated in his declaration made under penalty of perjury that he was not aware of any disclosures that she made to either the OIG or OSC, nor did he have such information prior to his current involvement in the IRA appeal. *Id.* at 27. *Compare* IAF, Tab 17, Subtab 4f at 6, *with id.*, Subtab 4t at 20.

¶24    These arguments do not warrant reversal of the initial decision. The record does not support the appellant's assertion on review that S.O., A.Q., and J.M.Q. did not want to follow the pertinent statutes and regulations. Moreover, we are not persuaded that there is a discrepancy in J.M.Q.'s statements. Rather, J.M.Q. credibly explained in his testimony that he did not regard the appellant's unsolicited correspondence to the agency administrator as whistleblowing and he only was aware that the appellant said that she filed a complaint with OIG. HCD. He further testified that he never saw what the appellant allegedly submitted to the OIG or OSC, nor had he seen any report from the OIG or OSC regarding any such allegations. HCD. For these reasons, we discern no error with the administrative judge's evaluation of the agency's motive to retaliate regarding the 3-day suspension. We also affirm the administrative judge's conclusion that the agency proved by clear and convincing evidence that it would have suspended the appellant in the absence of her whistleblowing activity.

¶25    The circumstances surrounding the appellant being marked as AWOL on October 22, 2010, are largely undisputed. The appellant was directed by T.H. to meet with another agency employee, and the date of the scheduled meeting was October 22, 2010. IAF, Tab 17, Subtab 4*l* at 56. The appellant subsequently requested compensatory leave for this date and other dates, and her requests were denied. *Id.* at 54. She later requested sick leave for these dates, and these requests also were denied. *Id.* at 48-49, 51. On the morning of October 22, 2010, the appellant requested sick leave for the day. *Id.* at 46. The appellant was

directed to provide medical documentation to support her absence and, when she failed to do so, was marked AWOL for that date. *Id.* at 44, 46.[9]

¶26 The administrative judge found "somewhat strong" evidence in support of the agency's decision to deny the appellant's request for leave and mark her as AWOL on October 22, 2010, when she failed to produce medical documentation. ID at 36. Citing T.H.'s "non-evasive demeanor" at the hearing, the consistency of his testimony with the documentary evidence, and the fact that he "readily admitted to make statements against his interest or that were inappropriate for a federal manager at his level," the administrative judge credited his testimony that he marked the appellant AWOL on October 22, 2010, because he believed that she was avoiding coming to work on this date. ID at 37-38.

¶27 On review, the appellant asserts that the reasonableness of T.H.'s beliefs are not evidence in support of the agency's action, especially if he is mistaken about the underlying facts, and she maintains that her successful defense against a subsequent proposed 5-day suspension based on the same AWOL offense undercuts the strength of the agency's evidence. PFR File, Tab 3 at 28-29; IAF, Tab 17, Subtab 4*l* at 39-41. These arguments are unavailing.

¶28 The administrative judge's credibility determinations are entitled to deference because they are based on T.H.'s demeanor. *See Haebe*, 288 F.3d at 1301. Moreover, given the context of the appellant's multiple requests for leave on a date that she previously had agreed to meet with another agency employee, and given the fact that the agency could have required the appellant to provide a medical certificate to substantiate a sick leave request, IAF, Tab 17, Subtab 4*l* at 26; ID at 38, we discern no error with the administrative judge's

---

[9] The administrative judge noted in the initial decision that the agency subsequently paid the appellant for 1 day of AWOL, but that the issue was not moot. ID at 18 n.12.

credibility determinations.[10] The administrative judge also discussed the appellant's successful challenge to the proposed 5-day suspension premised on the same AWOL allegation, ID at 38, and we find that she gave this evidence proper consideration in her analysis of the strength of the agency's evidence.

¶29 The appellant also contends that the initial decision ignores the fact that T.H. was trying to set the appellant up for discipline. PFR File, Tab 3 at 29; *see* W-5 AF, Tab 13, Ex. PP, Bates number 15457 (asking for assistance from Human Resources about how to "get [the appellant] out of here for the longest defendable period of time **quickly**") (emphasis in original). The administrative judge detailed the difficult and contentious work relations between the appellant, T.H., and other employees; she concluded that T.H.'s "inappropriate remarks to and about the appellant" did not weaken the agency's evidence in support of the AWOL charge. ID at 39-41. The appellant has not identified any additional persuasive evidence which detracts from this conclusion.

¶30 We have further considered the appellant's assertion that the administrative judge's decision to credit T.H.'s testimony is undermined by the fact that he made a "material false statement under oath." PFR File, Tab 3 at 30-31. She alleges that T.H. stated in his February 2011 declaration made under penalty of perjury that he was not "aware" that the appellant made any whistleblower disclosures to OSC or to OIG but he knew of such disclosures via a December 2010 email.

---

[10] Even if we determined that T.H. was incorrect in his belief that the appellant requested medical leave and did not report for work to avoid a meeting with another agency employee, and he therefore should have granted her leave request and not placed her on AWOL, this determination would not lead to the conclusion that he placed her on AWOL *because of her protected activity*. Rather, such a determination would likely only affect our evaluation of the *Carr* factor that discusses the strength of the agency's evidence; it would not affect our evaluation of the *Carr* factor involving the existence and strength of T.H.'s motive to retaliate. *Carr*, 185 F.3d at 1323. For the reasons discussed in the initial decision and herein, we agree with the administrative judge that the evidence to support a retaliatory motive is "weak," ID at 42, and our overall analysis of the *Carr* factors supports the conclusion that the appellant is not entitled to corrective action.

*Id.* at 31 (citing IAF, Tab 17, Subtab 4g; W-5 AF, Tab 11, Ex. 59). We have reviewed this documentation, but we are not persuaded that T.H. made a material false statement under oath or that the administrative judge's credibility determinations based on T.H.'s demeanor are not entitled to deference.

¶31    Notably, the December 2010 email and its attached correspondence do not use the word "whistleblowing" or any derivative thereof; at most, the attached correspondence stated that the appellant was advised that her retaliation claim should go to OSC. W-5 AF, Tab 11, Ex. 59. The appellant has not identified any evidence that T.H. actually reviewed the correspondence attached to the December 2010 email or that he even considered the appellant's OIG hotline call as a whistleblowing disclosure. The appellant acknowledges on review that T.H. was not asked about any alleged discrepancy during the hearing, and it is unclear why her representative failed to do so. PFR File, Tab 3 at 31; *see Sofio v. Internal Revenue Service*, 7 M.S.P.R. 667, 670 (1981) (finding that the appellant is responsible for the errors of his chosen representative). For these reasons, we discern no error with the administrative judge's conclusion that the strength of the agency's evidence was "somewhat strong." ID at 36.

¶32    Regarding the motive to retaliate element, the appellant cites to the administrative judge's "dismissive" view of T.H.'s "outrageous comments" to and about the appellant. PFR File, Tab 3 at 31-32. The administrative judge, however, discussed in detail T.H.'s "questionable" statements and remarks that were "at the least inappropriate and distasteful," but she found that they were "unrelated" to the appellant's whistleblowing. ID at 39-41. Additionally, the administrative judge found that the appellant had a tendency to exaggerate and explicitly did not credit her testimony that T.H. told her that she would be fired due to her whistleblowing. ID at 39.

¶33    Although the administrative judge did not specifically note in the initial decision that T.H. said that the appellant "was gumming up the works," PFR File, Tab 3 at 32, she mentioned that T.H. thought that the appellant was too involved

in minutia, ID at 40. Even if we consider this additional statement in our analysis of the motive to retaliate, a different outcome is not warranted. Notably, the administrative judge credited T.H.'s testimony that he did not care if the appellant made complaints or went to the OIG, as long as she continued to produce "widgets" as directed. ID at 39-40. Here, too, the appellant has not offered sufficiently sound reasons for reversing this credibility determination, *see Haebe*, 288 F.3d at 1301, and we affirm the administrative judge's conclusion that T.H. had little motive to retaliate against the appellant for her whistleblowing activity.

¶34    For these reasons, we affirm the administrative judge's analysis of the *Carr* factors regarding the imposition of 1 day of AWOL. We also affirm her decision to deny corrective action to the appellant in this matter.

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the

Federal Circuit or any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. You may choose to request review of the Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both. Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through the link below:
http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:                                  _____
                                                Jennifer Everling
                                                Acting Clerk of the Board

Washington, D.C.